## THE RACILIA.

### THE BLANCHE.

*(District Court, D. Massachusetts.* January 23, 1885.)

COLLISION—STEAM-TUG AND TOW—STEAM-SHIP—FAULT.

On examination of the evidence in this case, *held*, that the steam-tug was alone at fault in the collision with the steam-ship whereby her tow was damaged.

In Admiralty.

*J. C. Dodge* and *E. S. Dodge*, for libelants.

*Moorfield Story* and *B. L. M. Tower*, for the Racilia.

*Frank Goodwin*, for the Blanche.

NELSON, J. These are libels by the owners of the schooner Nina Tillson against the steam-ship Racilia and the steam-tug Blanche, for a collision in Boston harbor in the forenoon of August 23, 1884.

My conclusion upon all the evidence in the case is that the Blanche should be alone held responsible for this collision. The Blanche was employed by the master of the Nina Tillson, a large three-masted schooner, having on board a cargo of 965 tons of coal, to tow the latter from her anchorage on the westerly or South Boston side of the channel in the upper harbor of Boston to a wharf in Chelsea, where her cargo was to be delivered. The schooner was lying with her head to the tide, which was on the flood and setting strongly up the harbor. In performing this service the tug made fast to the starboard quarter of the schooner, and, with the wheels of both vessels put hard to starboard and their heads gradually turning northward, or up the harbor as they went, proceeded to tow the schooner across the channel. The Racilia, a large ocean-going English steam-ship, was coming up the harbor, her course being a little on the easterly or East Boston side of the channel. Her engines had been stopped in passing a bark at anchor and a steam-boat bound out, and had not been again started, and her only motion ahead was that caused by the flood-tide and the slight momentum of her previous speed, which had been dead slow. The tug and tow were seen from the steam-ship immediately after they began their passage across the channel, and her engines were at once put full speed astern and three blasts were blown from her steam-whistle. Before her speed could be wholly checked, she struck the schooner, then so far round as to be directly athwart the tide, on her starboard side, at the main rigging, at an angle slightly inclining forward, owing to the effect of the order "full speed astern" upon her right-hand propeller, and inflicted very serious damage. In the mean time the tug had cast off her lines and backed out of the way of the blow.

I perceive no evidence of fault on the part of the Racilia. The schooner and tug were seen and reported by her lookout, and were

also observed by her master and pilot from the bridge, immediately after they started across the channel. The order "full speed astern" was given and obeyed with all necessary promptness as soon as the exigency became apparent. During the short interval that intervened, no movement of her wheel could have affected her course. The proper signal of warning was also given. I am convinced that she did all that was possible under the circumstances to avoid the collision. On the other hand, the tug was guilty of negligence in having no lookout, in giving no signal by her whistle, in failing to see the Racilia until the collision became inevitable, although in plain sight, and in attempting to cross the channel ahead of the Racilia. The day was bright and clear, and the wind light. The space between the anchorage of the schooner and vessels at anchor on the opposite side of the channel did not exceed 900 feet. The schooner was under the sole management and control of the tug. In such a situation and under such responsibilities the conduct of those in charge of her was without excuse.

As the appraised value of the tug is less than the supposed damage to the schooner, it is for the interest of the schooner, as well as of the tug, to hold the steam-ship also responsible for the accident. The case they attempt to establish is that the tug with her tow had reached as near to the easterly side of the channel as the vessels at anchor there would allow, and had stopped her engines preparatory to again backing into the stream to complete the turn; that ample room was left for the steam-ship to pass astern; and that instead of starboarding and going astern the steam-ship ported and run into the schooner. To support this contention, reliance is placed mainly upon the testimony of the men in charge of the tug. In answer to this claim it is sufficient to say that the fault of these witnesses is shown so clearly that their testimony ought not to be permitted to outweigh the extremely convincing defense made by the Racilia.

In the case of the Racilia the libel is to be dismissed, with costs. In the case of the Blanche an interlocutory decree is to be entered for the libelants. Ordered accordingly.